UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————

№ 12-CV-6132 (JFB)(ARL)
————————————

AHDY L. ATTALLAH,

Plaintiff,

VERSUS

NEW YORK COLLEGE OF OSTEOPATHIC MEDICINE; NEW YORK INSTITUTE OF TECHNOLOGY; EDWARD GUILIANO and BARBARA ROSS-LEE, D.O., each in his or her official capacity at New York Institute of Technology; THOMAS SCANDALIS, D.O., MARY ANN ACHTZIGER, KURT F. AMSLER, CLAIRE E. BRYANT, and JOHN DOES 1, 2, 3 and 4, each individually and in his or her official supervisory role at New York College of Osteopathic Medicine; NASSAU UNIVERSITY MEDICAL CENTER; NASSAU HEALTH CARE CORPORATION; ALAN MULTZ, M.D., MARTIN DIAMOND, D.O., PRACHI ANAND, M.D., and JOHN SMITH 1 through JOHN SMITH 12, JANE SMITH 1, JANE SMITH 2, each individually and in his or her official supervisory role at Nassau University Medical Center or Nassau Health Care Corporation; GULNARA G. CHIKVAIDZE AKA CULNARA G. CHIKVAIDZE, IVERI SHAHIASHIVILI, and TAMARA I. SHASHIASHVILI AKA TAMARA CHACHIASHVILI AKA TAMARA SHASHIASHVILLI AKA TAMARA SHASHIASHIVLI, each in his or her personal capacity,

Defendants.
————————————

**MEMORANDUM AND ORDER**
March 27, 2015
————————————

JOSEPH F. BIANCO, District Judge:

On December 12, 2012, plaintiff Ahdy L. Attallah ("plaintiff") filed a complaint alleging civil rights violations pursuant to 42 U.S.C. § 1983 ("Section 1983") as well as numerous violations of New York law, such as breach of contract, fraud, and unjust enrichment, against: New York College of Osteopathic Medicine ("NYCOM"), New York Institute of Technology ("NYIT"), Edward Guiliano, Barbara Ross-Lee, Thomas Scandalis, Mary Ann Achtziger, Kurt F. Amsler, and Claire E. Bryant (together, the "NYIT defendants"); Nassau University Medical Center ("NUMC"), Nassau Health Care Corporation ("NHCC"), Alan Multz, and Prachi Anand (together, the

1

"NHCC defendants"); Gulnara G. Chikvaidze, Iveri Shashiashivili, and Tamara I. Shashiashvili (together, the "Shashiashvili defendants"); and Martin Diamond.

Plaintiff's complaint alleges a lengthy series of events underlying this action, but the gravamen is that plaintiff, a medical student at NYCOM, ended a romantic relationship with Tamara Shashiashvili ("Shashiashvili"), a medical resident at NUMC with whom he was co-habitating in her NUMC-provided housing, because she owed him $30,000 and was behaving erratically. Plaintiff alleges Shashiashvili then obtained a restraining order against him in Nassau County Family Court—using allegedly false accusations against plaintiff of harassment, violence, and other misdeeds as support for her petition—in retaliation for the breakup and to avoid paying the debt. She then allegedly informed NUMC/NHCC employees about the order, stating that plaintiff continued to harass her. Plaintiff alleges that Diamond, at the time an NUMC employee, then notified a NYCOM administrator about the order and Shashiashvili's other accusations. Plaintiff hypothesizes that all defendants then conspired to expel plaintiff from NYCOM—depriving him of his property rights in his medical education and his liberty interest in pursuing an occupation in medicine—and to evict him from Shashiashvili's NUMC housing, depriving him of a property interest, in violation of Section 1983.[1]

Presently before the Court are motions to dismiss the fourth amended complaint[2] by the Shashiashvili defendants, the NYIT defendants, the NHCC defendants, and Diamond, as well as the NYIT defendants' motion to sever the counts against the Shashiashvili defendants. For the following reasons, the Court grants the motions and dismisses the federal claims in the amended complaint with prejudice. Furthermore, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims at this juncture, and dismisses them without prejudice. The motion to sever is, therefore, dismissed as moot.

I. BACKGROUND

A. Facts

The following facts are taken from the Amended Complaint, and are not findings of fact by the Court. Instead, the Court will assume these facts to be true and, for purposes of the pending motion to dismiss, will construe them in a light most favorable to plaintiff, the non-moving party.

Plaintiff enrolled in 2008 as a medical student at NYCOM, a medical school privately owned and operated by NYIT. (Am. Compl. ¶¶ 12, 16-17.) Plaintiff had practiced as a doctor in Egypt before

---

[1] Plaintiff also makes claims under New York law for seizure of property/constructive eviction, breach of contract, tortious interference with contract, fraud, constructive fraud and conspiracy to defraud, negligent supervision, unjust enrichment, fraudulent misrepresentation, abuse of process, and defamation against some or all of the defendants.

[2] Plaintiff titled the most recent iteration of his complaint, filed April 25, 2014, as the "Fourth Amended Complaint." (ECF No. 81.) As defendants note in their submissions, the operative pleading contained in ECF No. 81 is procedurally the second amended complaint in this action. For simplicity's sake, this opinion will refer to ECF No. 81 as the "Amended Complaint" ("Am. Compl."). The Court also notes that the Amended Complaint does not itself have any exhibits attached, instead referring to exhibits attached to ECF No. 62, a proposed amended complaint filed previously. The Court treats those exhibits as though they were appended to the Amended Complaint.

2

moving to the United States in 1996. (*Id.* ¶ 12.) In 1999, plaintiff alleges he was investigated by the New Jersey Board of Medical Examiners because of a complaint made against him by a disgruntled ex-girlfriend. (*Id.* ¶ 37.) The investigation ended with the Board issuing a "consent order" on September 10, 2001 finding that plaintiff had "misrepresented his licensing status" during a prior court proceeding, and ordering that plaintiff "cease and desist from engaging in or holding himself out as engaging in the practice of medicine and surgery and from using the title or designation 'doctor,' 'physician,' or any other language or title denoting licensure." (*Id.*; Exhibit G in ECF No. 62-9.)

While plaintiff was a student at NYCOM, he became romantically involved with Shashiashvili, a medical resident at NUMC. (Am. Compl. ¶¶ 12-13.) At some point in 2009, plaintiff and Shashiashvili moved into subsidized housing provided to Shashiashvili by her employer, NUMC. (*Id.* ¶¶ 86-87.) NUMC is a teaching hospital owned and operated by NHCC, a public benefit corporation created pursuant to New York Public Authorities Law Article 10(c). (*Id.* ¶¶ 18-19.)

In August 2010, after a long series of disagreements alleged by plaintiff, plaintiff ended his personal relationship with Shashiashvili, informing her that he was moving out of her NUMC housing, and that she would have to repay several loans that he had given her. (*Id.* ¶¶ 38-184.)[3] Plaintiff alleges that Shashiashvili then, with the assistance of the other Shashiashvili defendants, fraudulently obtained an *ex parte* temporary order of protection against plaintiff in Nassau County Family Court—making a number of allegedly false accusations against plaintiff in her petition, such as he was stalking, harassing, and possibly poisoning her—after initially attempting and failing to obtain one in Connecticut state court. (*Id.* ¶¶ 195-218; *see also* ECF No. 62-3.)

Plaintiff alleges that on or around August 20 or 23, 2010, Shashiashvili then went to NUMC and made various statements about plaintiff, his alleged threats, and the temporary order of protection to multiple NUMC employees, including Multz, Anand, and others. (Am. Compl. ¶¶ 220-25.) Plaintiff also alleges that Shashiashvili obtained a copy of the New Jersey Board of Medical Examiners' consent order from the Internet, and showed that to Anand, Multz, and others. (*Id.* ¶ 241.) Plaintiff alleges that Shashiashvili also informed NUMC employees that plaintiff had forced her to obtain a $1.5 million life insurance policy naming him as the sole beneficiary. (*Id.* ¶ 235.) Plaintiff alleges that Multz then contacted Diamond—at that time the Director of Osteopathic Medical Education at NUMC and a board member of the NYCOM Educational Consortium ("NYCOMEC"), the organization that links NYCOM and the medical centers that provide rotations and residencies to its students—and advised him of Shashiashvili's concerns about plaintiff. (*Id.* ¶¶ 21, 30, 239.)

According to plaintiff, Diamond communicated with NYCOM

---

[3] During on such incident in January 2010, NUMC security guards came to the plaintiff and Shashiashvili's apartment and escorted her back to the hospital. (Am. Compl. ¶¶ 110-23.) Plaintiff asserts that the guards' arrival was not caused by violence or threats on his part, but does admit that the guards were sent to the apartment to escort her back, and alleges that Shashiashvili later told NUMC officials and others that someone called security because of audible yelling and crying. (*Id.*)

3

administrators, including Achtziger and/or Scandalis (NYCOM's dean), about Shashiashvili's accusations against plaintiff. (*Id.* ¶¶ 249-251, 270.) Diamond allegedly complained to the NYCOM administrators that, among other things, plaintiff was harassing Shashiashvili, that he had violated an order of protection she had obtained, and that there was a warrant for his arrest. (*Id.* ¶¶ 249-57, 270.)

Plaintiff alleges upon information and belief that Diamond and possibly other NUMC employees then conspired with NYCOM administrators, such as Achtziger and Scandalis, to have NYCOM retaliate against plaintiff for these perceived offenses against Shashiashvili by expelling plaintiff from NYCOM. (*Id.* ¶¶ 259-60.) They also conspired to "compel plaintiff to leave his Hospital apartment," *i.e.* Shashiashvili's NUMC-subsidized housing. (*Id.*)

Plaintiff alleges the NYIT defendants initiated an independent investigation of the accusations, including two in-person meetings with plaintiff: the first on August 25, 2010, with Achtziger and another administrator; and the second on August 26, 2010, for a full disciplinary hearing under the auspices of a Student Discipline Review Board consisting of four NYCOM administrators (Scandalis, Achtziger, Amsler, and Bryant). [4] (*Id.* ¶¶ 271-326.) During these meetings, NYCOM administrators questioned plaintiff about, among other things, his prior criminal history, a 1999 decision by the New Jersey Medical Board involving plaintiff which instructed him to "cease and desist from engaging in or holding himself out as engaging in the practice of medicine and surgery," his truthfulness on his application to NYCOM, his relationship with Shashiashvili, and her accusations against him. (*See id.* ¶¶ 37, 269-432.) Plaintiff alleges that he informed the administrators during the first meeting that his only prior arrest or conviction had been for shoplifting in the United States in 1990 while here on vacation, but that the charges were dropped. (*Id.* ¶ 303.) Before the second meeting, plaintiff alleges that NYCOM conducted an "internet surfing session" during which it uncovered other incidents from plaintiff's past, including the New Jersey Medical Board order, as well as a bench warrant in Nebraska for failing to answer a traffic summons. (*Id.* ¶ 310-19.) At the second meeting, plaintiff alleges that he explained these incidents when questioned, as well as another arrest in 2008 for theft which had not yet been resolved. (*Id.* ¶ 358-68.)[5]

Plaintiff alleges that, during the disciplinary hearing, NYCOM denied him adequate process by, among other things, improperly presenting evidence and "orchestrat[ing]" a procedurally improper unanimous vote of guilty by falsifying the vote of Manning, the absent review board member. (*Id.* ¶¶ 320-432.) Plaintiff alleges the procedurally defective disciplinary hearing was a product of the NYCOM administrators' desire to expel him in order to extend a "professional courtesy" to Diamond and NUMC. (*Id.* ¶ 432.)

On August 27, 2010, plaintiff was notified that he was expelled from NYCOM. (*Id.* ¶ 433.) Plaintiff alleges that the grounds

---

[4] Plaintiff alleges upon information and belief that Scandalis deliberately scheduled the review board to avoid the attendance of another administrator, Ronald Manning, who plaintiff alleges has a law degree and would have questioned the charges against plaintiff. (*Id.* ¶ 416.)

[5] Plaintiff alleges that Scandalis then stated that plaintiff had lied on his NYCOM application and violated the Student Code of Conduct because he failed to disclose these incidents. (*Id.* at ¶¶ 369-76.) Plaintiff contests the accuracy of that statement.

for his expulsion, based on an email sent by Achtziger to other administrators, were: "providing false and misleading information or withholding or omitting information from a NYCOM official or judicial body," and noncompliance with NYCOM regulations (specifically, that there were discrepancies in his application materials, and that plaintiff failed to report certain incidents or legal issues after admittance as required by the Student Handbook.) (*See id.* ¶ 448; Exhibits H-13, H-14 in ECF No. 62-11.) Plaintiff alleges that his expulsion was also procedurally improper under the standards set forth in NYCOM's Student Handbook, particularly with respect to Scandalis' omission of plaintiff's right to a written appeal of the expulsion in his letter to plaintiff. (Am. Compl. ¶¶ 438-44.)

Plaintiff also alleges that during the expulsion hearing there was discussion about his living situation in Shashiashvili's NUMC-subsidized housing; plaintiff alleges that NYIT defendants and the NHCC defendants agreed that Scandalis should order plaintiff to vacate Shashiashvili's apartment. (*Id.* ¶¶ 342-45.) Plaintiff alleges that, "Praying that he might reverse the [NYCOM's decision to expel him], plaintiff scrambled to move out of [Shashiashvili's NUMC-subsidized housing]." (*Id.* ¶ 465.)

Plaintiff commenced this action *pro se* on December 12, 2012, seeking monetary damages and equitable relief. On February 20, 2013, plaintiff filed an amended complaint. On September 10, 2013, plaintiff attempted to file a second amended complaint without a motion. The Court issued a briefing schedule for plaintiff to move to file a second amended complaint on January 30, 2014. On February 28, 2014, plaintiff retained counsel for the purposes of this action. On April 25, 2014, plaintiff moved to file a second amended complaint, to which defendants consented on May 23, 2014. On July 30, 2014, each of the groups of defendants filed a motion to dismiss the amended complaint, and the NHCC defendants moved to sever the claims asserted solely against Shashiashvili. Plaintiff filed oppositions to those motions on October 7, 2014, and October 20, 2014. Defendants filed replies on December 1, 2014, and December 4, 2014, and the Court heard oral argument on February 10, 2015.

This matter is fully submitted, and the Court has fully considered the submissions of the parties.

II. MOTION TO DISMISS

A. Standard of Review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, district courts must "identify[ ] pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

B. Discussion

From amongst the numerous arguments made by the four sets of defendants, the Court first considers defendants' argument that plaintiff's three claims under Section 1983 are deficient. Those claims are: (1) deprivation of his property interest in his NYCOM degree without due process under the Fourteenth Amendment for his "arbitrary and capricious" expulsion from NYCOM; (2) deprivation of his property interest in Shashiashvili's NUMC-provided apartment without due process under the Fifth Amendment for his "constructive eviction" therefrom;[6] and (3) deprivation of his liberty interest in his reputation and chosen career without due process under the Fourteenth Amendment for "destroy[ing] his right to practice medicine anywhere in the U.S. and further deprivations of liberty by destroying his good name and reputation in arbitrarily and capriciously subjecting him to the stigma of expulsion" (*see* Am. Compl. ¶¶ 711-98).

Defendants contend that, even if plaintiff's expulsion from NYCOM (a private medical school) affected protected property or liberty interests, plaintiff is barred from seeking relief under Section 1983 because he had an adequate post-deprivation remedy via a proceeding under Article 78 of the New York Civil Practice Laws and Rules ("Article 78").[7] Plaintiff argues in response that an Article 78 proceeding would not necessarily satisfy due process because his expulsion was "pursuant to an established state procedure" and because the deans at NYCOM who expelled him were senior officials with decisionmaking authority. (*See* Pl. Mem. in Opp. to NHCC Defs., ECF No. 106, at 11-15; Pl. Mem. in Opp. to Diamond, ECF No. 108, at 15.)

For the following reasons, the Court concludes that plaintiff has failed to state any valid claims under Section 1983, and those claims should be dismissed. The Court declines to retain jurisdiction over

---

[6] Plaintiff in his opposition briefs and at oral argument withdrew this Section 1983 claim for a deprivation of his property interest in Shashiashvili's apartment in violation of the Fifth Amendment. As defendants noted in their briefing and at oral argument, plaintiff had no property interest in the subsidized housing provided to Shashiashvili by her employer. Moreover, plaintiff himself alleged in his complaint, before the supposed conspiracy against him, he had informed Shashiashvili he was moving out of her apartment. (Am. Compl. ¶ 184.) Therefore, plaintiff's claim would have been dismissed regardless of his withdrawal.

[7] Defendants also argue plaintiff's expulsion from NYCOM did not constitute state action, because the NHCC defendants and Diamond (the only state actors involved in this case) had no involvement in the disciplinary proceedings or the decision to expel plaintiff. The only relevant action by a state actor alleged by plaintiff is Diamond's communication with a NYCOM administrator, notifying her of the order of protection Shashiashvili obtained against plaintiff and her other accusations. Defendants, therefore, argue that plaintiff has not established that state action at any point deprived him of a constitutionally protected right. However, the Court need not address this issue because, even assuming *arguendo* that plaintiff had plausibly alleged state action, the procedural due process claims still fail as a matter of law, as discussed below, because of the availability of an Article 78 proceeding to challenge his expulsion.

plaintiff's remaining state law claims, and dismisses those claims without prejudice.

1. The Section 1983 Claims

In order to state a claim under Section 1983, "a plaintiff must allege (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwyer v. Regan*, 777 F.2d 825, 828 (2d Cir. 1985).

Plaintiff bases his claim for a deprivation of a property interest on a theory of an implied contract with NYCOM for his degree. *See, e.g.*, *Branum v. Clark*, 927 F. 2d 698, 705 (2d Cir. 2011) (an "implied contract" between a public college and a student, as recognized under New York state law, provides the basis for a property interest entitled to constitutional protection) (citing 402 N.E.2d 1150, 1153 (2006)). He states his deprivation of liberty claim under a "stigma-plus" theory, arguing that his "arbitrar[y] and capricious[]" expulsion caused him to suffer reputational damage and loss of career prospects in violation of the Fourteenth Amendment's due process guarantee, such that "no hospital will consider plaintiff for a residency program with [NYCOM's expulsion] on his record." (Am. Compl. ¶¶ 782-83.) "A § 1983 liberty interest claim of this sort—commonly referred to as a stigma-plus claim—requires a plaintiff to allege (1) the utterance of a statement about [him] that is injurious to [his] reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (alteration in original) (internal quotation marks and citations omitted).[8] Both deprivations were caused by his expulsion, which plaintiff argues was provoked by the email from Diamond at the state hospital, rendering the expulsion "joint activity" between a state actor and the private hospital.

Assuming *arguendo* that the *Dwyer* elements are satisfied, however, plaintiff must also demonstrate that his interests were deprived *without due process of law* in order to plausibly state a claim. *See Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984); *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006) ("Stated differently, the availability of adequate process defeats a stigma-plus claim.") (citing *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)).

In this case, the Court finds that plaintiff had an adequate post-deprivation remedy via a proceeding under Article 78. It is well-settled that "an Article 78 proceeding is adequate for due process purposes even

---

[8] Defendants argue that plaintiff's stigma-plus theory is flawed because, as plaintiff stated in his briefing, "The 'stigmatizing statements' about plaintiff required to establish a liberty interest deprivation took place when NYCOM employee 'John Doe' announced to NYCOM that plaintiff had been expelled. The expulsion message . . . was further circulated [by Shashiashvili and the Homeowner]." (*See* Pl. Mem. in Opp. to NHCC Defs., ECF No. 106, at 9 (citation omitted).) As defendants correctly note, such statements would not satisfy the "stigma plus" requirements because they are facially accurate; simply "announc[ing]" the fact of plaintiff's expulsion, stigmatizing or not, cannot be shown or plausibly alleged to be false because plaintiff was indeed expelled. In addition, defendants argue no constitutionally protected property interest exists with respect to a degree from a private college. However, the Court need not decide these issues; rather, for the purposes of this opinion, the Court assumes that plaintiff could assert a plausible "stigma plus" claim and/or a plausible property interest claim, and concludes that such claims fail as a matter of law because of the availability of Article 78.

7

though the petitioner may not be able to recover the same relief that he could in a § 1983 suit." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996). Generally speaking, the availability of an Article 78 proceeding bars seeking relief under Section 1983 when there is an adequate state post-deprivation procedure to remedy a random or arbitrary deprivation of property or liberty. *Id.* at 881-82 (citations omitted).

Students in New York schools—both public and private—have frequently sought relief from disciplinary action through an Article 78 hearing. "It is undisputed that the actions of a private university against a student are subject to Article 78 review and that the courts will intervene if the disciplinary dismissal of a student is arbitrary." *Harris v. Trustees of Columbia Univ. in City of New York*, 470 N.Y.S.2d 368, 370 (1st Dep't 1983), *rev'd on other grounds,* 468 N.E.2d 54 (1984). For example, in *Rosenthal v. New York University*, the Second Circuit reviewed an Article 78 petition in a diversity action by a private business school student who had been dismissed after a school disciplinary hearing, to ensure that "NYU and Stern have acted in good faith in its dealings with its students." 482 F. App'x 609, 611-12 (2d Cir. 2012) (internal quotation marks and citations omitted). *See also Olsson v. Board of Higher Ed.*, 402 N.E.2d 1150 (2006) (student bringing Article 78 proceeding to compel college to award degree); *Hutcheson v. Grace Lutheran Sch.*, 517 N.Y.S.2d 760, 761 (2d Dep't 1987) (Article 78 proceeding reviewing expulsion of first grader from private elementary school); *Waldman by Waldman v. United Talmudical Acad. Torah V'Yirah*, 558 N.Y.S.2d 781, 782 (Sup. Ct. 1990) (Article 78 proceeding against private religious schools and rabbi challenging the expulsion of six children); *see also Ansari v. New York University*, No. 96 CIV. 5280 (MBM), 1997 WL 257473, at *2 (S.D.N.Y. May 16, 1997) (noting the availability of Article 78 to review various academic decisions at private educational institutions "including: grading disputes, dismissals, expulsions, suspensions, and decisions regarding whether a student has fulfilled the requirements for graduation").

Plaintiff, however, argues that an Article 78 proceeding to challenge his expulsion would not have been adequate because the deprivation of his liberty was made by NYCOM administrators, and was "based on an established procedure [the disciplinary hearing] rather than a random, unauthorized act, [therefore] the availability of additional process in an Article 78 proceeding *does not* bar a due process claim." (Pl. Mem. in Opp. to Diamond, ECF No. 108, at 15 (emphasis in original).) While plaintiff is correct that, under certain circumstances, not all state law post-deprivation remedies provide adequate process to preclude a Section 1983 claim, the Court rejects plaintiff's argument that the deprivation here was not alleged to be random and arbitrary. In essence, plaintiff's complaint alleges that, after Diamond's allegedly random and unauthorized email to Achtziger complaining about plaintiff's behavior toward Shashiashvili, the NYCOM administrators violated the school's disciplinary rules and procedures in order to expel plaintiff and therefore appease Diamond and the state hospital. Such an alleged abuse of process is indeed the definition of a "random and unauthorized" act that Article 78 is designed to remedy. *See, e.g.*, *Chaffer v. Bd. of Educ. of City Sch. Dist. of City of Long Beach*, 229 F. Supp. 2d 185, 189 (E.D.N.Y. 2002) (dismissing Section 1983 claim for abuse of process during school board disciplinary hearing, holding that "[t]o the extent that [plaintiff] is arguing that the Board failed to follow appropriate . . . procedures in terminating him, his claim necessarily fails because of

the availability of Article 78 review.") *aff'd*, 75 F. App'x 12 (2d Cir. 2003).

Moreover, plaintiff fails to address the numerous federal and state cases in which claims identical to plaintiff's—complaining that officials expelled or suspended the plaintiff from a private or public school arbitrarily and capriciously, and/or in bad faith, and/or in violation of their own disciplinary code—have been capably reviewed by courts in Article 78 proceedings. *See, e.g.*, *Rosenthal*, 482 F. App'x at 611-12 (reviewing dismissal of business school student in Article 78 proceeding to ensure disciplinary process was conducted "in good faith"); *Kickertz v. New York Univ.*, 952 N.Y.S.2d 147, 155 (1st Dep't 2012) (reinstating NYU dental school student after school dismissed her in a manner that "did not substantially comply with its own published guidelines and policies," because plaintiff "was not given a fair opportunity to cross-examine her accusers" and that "key procedural rulings were made and/or influenced" by a dean during NYU's disciplinary hearing); *Hutcheson*, 517 N.Y.S. at 761 (Article 78 proceeding to determine "whether there was a rational basis in the exercise of the school's discretion, or whether the action to expel was arbitrary and capricious"). Plaintiff here alleges that "defendants used the Expulsion Hearing for the unauthorized purpose of subjecting plaintiff to extortionate pressure and extraordinary humiliation, fear, shame and distress," and that defendants "arbitrarily and capriciously subject[ed] him to the stigma of expulsion." (Am. Compl. ¶¶ 750, 782.) It is, therefore, self-evident that plaintiff's claims fall within the category of claims regarding arbitrary and unauthorized school administrative discipline for which an Article 78 proceeding has long provided adequate post-deprivation due process. As the Second Circuit has emphasized, "[t]his court has held on numerous occasions that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate postdeprivation remedy." *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (internal quotations and citation omitted).

Other courts in the Second Circuit have reached the same conclusion under analogous circumstances. For example, in *Cohn v. New Paltz Sch. Dist.*, 363 F. Supp. 2d 421 (N.D.N.Y. 2005), a high school student asserted, *inter alia*, a due process claim against the school in connection with his suspension for misconduct. As the court noted, the defendants "contend[ed] that it is well established in the context of disciplinary proceedings that post-discipline due process provides sufficient due process to satisfy the requirements of the Fourteenth Amendment." *Id.* at 433 (citation omitted). The court agreed, and held that plaintiff had failed to state a cause of action under Section 1983 for violation of his procedural due process rights because of the availability of the procedural safeguards of an Article 78 proceeding to challenge any disciplinary decision. *Id.* at 433-34. *See also S.C. v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-1672 CS, 2012 WL 2940020, at *10 (S.D.N.Y. July 18, 2012) (an Article 78 proceeding is "itself a sufficient post-deprivation remedy" precluding a procedural due process claim for review of decisions by school administrators); *cf. DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 491 (E.D.N.Y. 2009) (granting summary judgment on due process claim based on long-term suspensions because plaintiffs received initial hearing and "plaintiffs also could have resorted to an Article 78 proceeding"), *aff'd*, 623 F.3d 71 (2d Cir. 2010); *Bogle-Assegai v. Bloomfield Bd. Of Educ.*, 467 F. Supp. 2d 236, 243 (D.

9

Conn. 2006) (same), *aff'd*, 312 F. App'x. 435 (2d Cir. 2009); *Schwartz v. Schuker*, 298 F. Supp. 238, 241 (E.D.N.Y. 1969) (an appeal through Section 310 of the New York Education Law also provides adequate post-deprivation due process for a suspended student to preclude a Section 1983 claim). The Court agrees with this well-settled case authority which holds that Article 78 is an adequate post-deprivation remedy in state court for resolving disputes over discipline in public and private schools.[9]

In sum, because an adequate post-deprivation remedy exists for review of plaintiff's expulsion, there can be no Fourteenth Amendment violation to support a Section 1983 claim.[10] *See Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880-82 (citations omitted); *Spang v. Katonah-Lewisboro Union Free Sch. Dist.*, 626 F. Supp. 2d 389, 397 (S.D.N.Y. 2009) (Article 78 proceedings "provide sufficient procedural protection as post-deprivation name-clearing hearings."); *see also Grillo*, 291 F.3d at 234 (dismissing Section 1983 due process claim because "[plaintiff] has not provided an adequate explanation for his failure to avail himself of the name-clearing hearing offered by an Article 78 hearing"). For this reason, plaintiff does not state a valid Section 1983 claim for a deprivation of either a property or liberty interest.

### 2. State Law Claims

Because the Court dismisses all of plaintiff's federal claims, the Court need not consider, at this juncture, the balance of defendants' arguments for dismissing the federal claims in the amended complaint. Defendants have also moved to dismiss the state law claims on several grounds, including plaintiff's failure to serve a notice of claim, failure to file within the statute of limitations, and collateral estoppel. However, "[i]n the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal

---

[9] The Court has considered whether the alleged state involvement in plaintiff's expulsion (Diamond's email), as discussed *supra*, affects the analysis. It does not. Diamond's random and unauthorized email, in and of itself, did not deprive plaintiff of any protected interests. The locus of the alleged deprivations and the root of this case is the alleged lack of procedural due process in plaintiff's dismissal from NYCOM, which is clearly remediable by an Article 78 proceeding. As evidenced by the Amended Complaint, plaintiff had numerous possible remedies at state law for any allegedly wrongful acts (separate from the expulsion) by Diamond, including naming him in his Article 78 proceeding. Finally, even treating the expulsion as having been entirely effected by a state actor does not change the Court's analysis, because an expulsion from a school by a state actor is equally remediable by an Article 78 proceeding, as discussed *supra*.

[10] Moreover, the fact that any such proceeding may now be untimely does not alter the Court's analysis. *See Campo v. New York City Employees' Ret. Sys.*, 843 F.2d 96, 102 n.6 (2d Cir. 1988) ("[Plaintiff] may be barred by [the statute of] limitations from presently proceeding pursuant to Article 78. However, the fact that Article 78 may not now be available to [plaintiff] for that reason would not affect the result herein because [plaintiff] had available an Article 78 remedy whether she timely utilized it or not."); *Johnson v. Doe*, No. 00 CIV 3920 JSR KNF, 2001 WL 246370, at *3 (S.D.N.Y. March 12, 2001) ("Moreover, to the extent that plaintiff is alleging that [purported defendants] refused, wrongfully, to consider the medical documentation that is in the record, she has not stated a claim under federal law. It appears that any refusal to consider and be governed by the medical submissions made by the plaintiff was prompted by the failure of the submissions to comport with the requirements of the applicable New York statute. Plaintiff could have challenged the alleged failure to consider her medical documentation in an Article 78 proceeding in the New York State Supreme Court. However, the applicable four-month statute of limitations for commencing such a proceeding appears to have elapsed. The fact that an Article 78 proceeding may no longer be an available option for plaintiff does not create a legitimate claim of due process violation.").

claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). Therefore, in the instant case, the Court, in its discretion, declines to exercise supplemental jurisdiction over any remaining state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99–CV–3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court."). Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over plaintiff's remaining state law claims, and dismisses these claims without prejudice.

### C. Leave to Amend

Having concluded that plaintiff has failed to state a plausible claim under Section 1983, the Court has considered whether he should be afforded an opportunity to amend his complaint. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires."

Here, plaintiff is represented by counsel and has amended his complaint several times already. The operative pleading is 162 pages long and provides a seemingly exhaustive recitation of facts, but fails to allege a plausible claim for a violation of a constitutionally protected right. Additional factual pleadings could not cure the legal defect in plaintiff's due process claims – namely, the availability of the Article 78 proceeding. In other words, better pleading would not cure this defect in the federal claims, and leave to amend these claims is, therefore, denied as futile. *See, e.g.*, *Cuoco*, 222 F.3d at 112 (holding that leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint); *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."); *Bridgeforth v. U.S. Navy Recruitment Office*, No. 11-CV-431 (TJM/RFT), 2011 WL 5881778, at *2 (N.D.N.Y. Nov. 23, 2011) ("Amendment would be futile here because Plaintiff's claims arise from events, which he was aware of, that occurred more than three years before he commenced this Section 1983 action. Thus, his claims are time barred, and amendment would be futile because repleading would not cure the timeliness deficiency." (internal citation omitted)); *Vargas v. Ciarletta*, No. 09-CV-8981 (SAS)(TH), 2010 WL 4447636, at *1 (S.D.N.Y. Nov. 4, 2010) ("[I]f the claims the plaintiff seeks to add would be barred by the applicable statute of limitations, amendment would be futile and leave to amend should be denied.").

Thus, leave to amend the complaint to attempt to re-assert the federal claims discussed in this opinion is denied.

IV. CONCLUSION

For the reasons set forth herein, the Court grants defendants' motions to dismiss the federal claims, and denies plaintiff leave to file an amended complaint. The Court declines to exercise supplemental jurisdiction over any state law claims at this juncture and, in its discretion, dismisses those claims without prejudice. The motion to sever claims against the Shashiashvili defendants is, therefore, denied as moot.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 27, 2015
  Central Islip, NY

\*   \*   \*

Plaintiff is represented by Kevin T. Mulhearn of Kevin T. Mulhearn, P.C., 60 Dutch Hill Road, Ste. 15, Orangeburg, New York, 10962. Defendant Diamond is represented by Daniel R. Milstein of Greenberg Traurig LLP, 200 Park Ave., 28th Floor, New York, New York, 10166. The NHCC defendants are represented by Amy Ventry-Kagan and William H. Ng of Littler Mendelson, 290 Broadhollow Road, Ste. 305, Melville, New York 11747. The NYIT defendants are represented by Douglas P. Catalano, Neil G. Sparber, and Samantha E. Beltre of Norton Rose Fulbright US LLP, 666 Fifth Ave., New York, New York 10103. The Shashiashvili defendants are represented by Gary Schoer, Esq., 6800 Jericho Turnpike, Syosset, NY 11791.